IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jardis Industries, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Scott Quinn, Michael Anderson, Myco Grafix, | ) |
| Ltd. Inc., Graphic System Supply, Inc., | ) |
| | ) |
| Defendants. | ) |

Case No.: 08-7268

Judge: Andersen

## DEFENDANT ANDERSON'S ANSWER AND AFFIRMATIVE DEFENSES

Defendant Michael Anderson ("Defendant"), through counsel, answers the complaint of

Jardis Industries ("Plaintiff") as follows:

1.      This action is brought under the Federal Copyright Act of 1976, as amended, (17

U.S.C. Sec. 101 et. seq.).

**Answer:      Defendant admits that at least some of Plaintiff's claims purport to arise under the Copyright Act.**

This Court has jurisdiction pursuant to Section 1338(a) of the Judicial Code (28 U.S.C.,

Sec. 1338(a)).

**Answer:      Admitted.**

Venue is conferred by Section 1400(a) of the Judicial Code (28 U.S.C., Sec. 1400(a)).

Jurisdiction for Count II of this COMPLAINT is based on 1338(b) of the Judicial Code (28

U.S.C., Sec. 1338(b)) in that the infringement of the PLAINTIFF'S copyright by the

DEFENDANTS is substantial.

**Answer:      Defendant acknowledges the basis under which Plaintiff claims that venue is proper in this District. Defendant denies that any copyright infringement has occurred.**

Jurisdiction for Count III of this COMPLAINT is based on 1338(b) of the Judicial Code

(28 U.S.C. Sec. 1338(b)).

**Answer:**     **Denied.**

Jurisdiction for the remaining counts which set forth state law claims is set forth under 28 U.S.C. 1367.

**Answer:**     **Admitted.**

2.     PLAINTIFF, JARDIS is an Illinois corporation with its principal place of business located at 1201 Ardmore Avenue, Itasca, Illinois. Among other things, JARDIS is engaged in the design, manufacture, sale and service of printing pressroom equipment.

**Answer:**     **Admitted.**

3.     On information and belief, DEFENDANT, Scott Quinn (hereinafter "QUINN") is a resident of Port Charlotte, Florida.

**Answer:**     **Admitted.**

4.     Upon information and belief, Defendant, Michael Anderson (hereinafter "ANDERSON"), is a resident of Port Charlotte, Florida.

**Answer:**     **Admitted.**

5.     Upon information and belief, Defendant, Graphic System Supply, Inc., (hereinafter "GSS 2") is a Florida corporation, with its principal place of business at 1109 Tamiami Trail, Port Charlotte, Florida.

**Answer:**     **Admitted.**

6.     Upon information and belief, Defendant, Myco Grafix Ltd. Inc., (hereinafter "MYCO") is an Illinois corporation, with its principal place of business at 1109 Tamiami Trail, Port Charlotte, Florida.

**Answer:**     **Defendant admits that the proper corporate name of this corporate defendant is Myco Grafix Ltd. and admits the remainder of the allegations of paragraph 6.**

2

7.      JARDIS designs, manufactures, sells and services printing presses and auxiliary equipment for press rooms.

**Answer:      Admitted.**

8.      Alan Jardis ("AL") was Vice President of Engineering at Cary Company, ANDERSON and QUINN were former employees of Cary Company.

**Answer:      Admitted.**

9.      AL resigned from the Cary Company in 1985 and incorporated JARDIS. There, AL began to design and manufacture equipment for the printing industry.

**Answer:      Admitted.**

10.     In June 1985, Cary Company filed bankruptcy.

**Answer:      Admitted.**

11.     Thereafter, ZERAND CORPORATION ("ZERAND") purchased all of Cary Company's assets in bankruptcy court, including all right, title and license to use its intellectual property.

**Answer:      Admitted.**

12.     In 1985, ANDERSON and QUINN left the Cary Company.

**Answer:      Denied.**

13.     In early 1986, ANDERSON, MICHAEL SZCZESNIAK and AL, formed a partnership called Graphic System Services ("GSS"). GSS sold parts to the printing press industry, and provided field service to Cary Company customers that were disaffected by Cary Company's bankruptcy.

**Answer:      Defendant admits a corporation (not a partnership) was formed, admits that GSS sold parts, and lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations of paragraph 13.**

14.    In September 1986, QUINN was hired by JARDIS as an assembly foreman and service employee. Later, QUINN briefly left the employ of JARDIS, then returned to work after six months.

**Answer:    Admitted.**

15.    In 1989, JARDIS purchased the assets of CARY DESIGN, INC. d/b/a CARY DESIGN ("CARY") from ZERAND.

**Answer:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

16.    Inclusive in that purchase was JARDIS' acquisition of all right, title and interest in CARY'S intellectual property, including all right, title and license to use its copyrights, patents, trademarks, trade names, drawings and designs and derivative works thereof.

**Answer:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

17.    JARDIS uses several of these drawings and designs to manufacture parts for its auxiliary printing equipment in addition to those which JARDIS has created in its own right, to service the printing press industry.

**Answer:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

18.    Accordingly, at all relevant times hereto, JARDIS holds and remains in possession of all right, title and interest to the copyrights for the CARY designs and works, as well as all works created from the same and any derivatives thereof.

**Answer:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

19.    One of the drawings that JARDIS purchased and acquired from ZERAND/CARY is a drawing entitled "Gear Housing Base 8273 D" ("8273 D").

4

**Answer:       Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

20.     8273 D is a schematic drawing that represents a casting for one of JARDIS' gearboxes and equally sets forth and is a representation of how to finish it. 8273 D was acquired when JARDIS purchased the assets of CARY from ZERAND.

**Answer:       Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

21.     8273 D is a unique design and drawing from which the part represented therein can be manufactured, and without which the part represented therein could never be manufactured.

**Answer:       Denied.**

22.     8273 D being just one example, JARDIS also manufactures several other printing press components and gearboxes for individual clients per their exact need and specifications. JARDIS uses these customized parts to service each customer's individual needs. JARDIS has developed a long-term relationship with each of these clients and in doing so has learned each client's specific needs such that it provides each client individualized products and service. JARDIS does not share this knowledge with the public, and such knowledge is only available to select JARDIS employees tasked with the servicing of a given account.

**Answer:       Defendant admits that Jardis manufactures printing press components and gearboxes. Defendant denies that Jardis does not share knowledge and that such knowledge is only available to select Jardis employees tasked with the servicing of a given account. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remainder of the allegations in this paragraph.**

23.     JARDIS has expended large sums of money to acquire 8273 D and other intellectual property from. CARY and ZERAND. 8273 D contains a substantial amount of original material created by CARY and ZERAND and is a copyrightable subject matter under the laws of the United States.

**Answer:     Defendant denies that 8273 D contains original material or is otherwise copyrightable subject matter. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

24.     JARDIS has not granted a license nor has it assigned the right to use, sell, reproduce, modify, publish or create derivative drawings or designs of or from 8273 D to any of the DEFENDANTS.

**Answer:     Defendant denies that Jardis has not granted a license. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

25.     JARDIS has complied in all respects with the copyright laws of the United States and has secured the exclusive rights and privileges in and to 8273 D. JARDIS has applied for and received from the Register of Copyrights the appropriate Certificates of Copyright Registration for 8273 D. True and accurate copies of the Certificates of Copyright Registration for 8273 D are attached as Exhibit A.

**Answer:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

26.     Commencing on the date of first publication, and consistently thereafter, 8273 D has been published by JARDIS in conformity with the copyright laws of the United States.

**Answer:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

27.     JARDIS has gone to a great deal of expense in acquiring and developing its copyrighted drawings and works and as a direct result thereof, JARDIS' drawings have a substantial market value in the printing press industry.

**Answer:     Defendant denies Plaintiff has alleged ownership of any copyrightable subject matter. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph**

28.     Moreover, several of JARDIS' processes and designs are unique and confidential such that they are tailored to and for a specific client. Without that knowledge, another prospective servicer or manufacturer could not simply start over to compete with and do what JARDIS does.

**Answer:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

29.     JARDIS uses confidential and proprietary manufacturing processes and drawings, parts lists, equipment manuals, customer and vendor lists to design and manufacture its products and component parts for those products.

**Answer:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

30.     JARDIS' proprietary manufacturing processes and its drawings, parts lists, equipment manuals are not known to competitors outside of its business.

**Answer:     Defendant denies that Plaintiff does not share certain business information with others outside its business. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

31.     JARDIS has spent years developing its customer and vendor lists. Further, for each such customer, JARDIS has developed pricing information and a customer contact who is a decision maker within that customer. JARDIS' customer lists, vendor lists and pricing information are not known to competitors outside of its business and are constantly tweaked by it to better service the clients.

**Answer:     Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

32.     JARDIS does not share its proprietary manufacturing processes, drawings, parts lists, equipment manuals, customer and vendor lists with the outside public or with suppliers or vendors, as this information has immeasurable value as the lifeblood of JARDIS' business, and

would be valuable to competitors as a means of duplicating JARDIS' entire product line and services.

> **Answer:** **Defendant denies that Plaintiff does not share certain business information with others outside its business. Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph..**

33.     After JARDIS acquired CARY from ZERAND, JARDIS formed an arrangement with ANDERSON and GSS in which ANDERSON and GSS continued to service CARY customers, but, in which GSS purchased proprietary parts from JARDIS to do so. During that time, ANDERSON continued to work for JARDIS as an outside sales agent, and if he sold equipment he would receive a commission that was paid directly to ANDERSON. If GSS sold proprietary parts, they purchased those parts from JARDIS and marked them up to the customer for their profit.

> **Answer:** **Defendant admits an arrangement was made. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.**

34.     In 2001, GSS dissolved.

> Answer:     **Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

35.     In 2002, ANDERSON founded MYCO, primarily to sell printing press parts of clients and to clients of JARDIS.

> **Answer:     Denied.**

36.     JARDIS and MYCO entered into an oral arrangement in which MYCO agreed to sell JARDIS parts to clients of MYCO in Central and South America provided that those same parts were purchased from JARDIS.

> **Answer:     Denied.**

37.    This contractual oral arrangement proved lucrative for both parties. However, QUINN and ANDERSON realized that they could make more money if they simply sidestepped JARDIS by stealing its intellectual property to do for themselves what they did for and with JARDIS.

**Answer:    Denied.**

38.    In the course and scope of his employment with JARDIS, QUINN had access to JARDIS' intellectual property and trade secrets including access to a proprietary JARDIS manufacturing process and to its drawings, parts lists, equipment manuals, customer and vendor lists.

**Answer:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

39.    One of the drawings QUINN had access to was 8273 D.

**Answer:    Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

40.    In 2003, QUINN resigned from JARDIS. Before he resigned, QUINN had traveled the country purportedly on behalf of JARDIS, when, in reality, he was representing the DEFENDANTS to feather their nest with JARDIS clients. Indeed, when he "retired," rather than move to Las Vegas, as he informed AL he was doing, QUINN moved to the Port Charlotte, Florida, area where he incorporated Graphic System Sales ("GSS 2") to do for DEFENDANTS exactly what GSS did for JARDIS, and, using the very same customer base to do so.

**Answer:    Defendant denies that Quinn was "representing the DEFENDANTS to feather their nest with JARDIS clients." Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

41.    Shortly after QUINN departed, a JARDIS customer provided JARDIS a ("GSS 2") card that was given to them by QUINN in 2003 before he left JARDIS.

**Answer:        Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

42.    Upon information and belief, QUINN provided that same card to nearly all of the JARDIS customers he was "servicing" while employed by and working with JARDIS in order to serve the DEFENDANTS' interests to JARDIS' detriment and to purloin JARDIS' clients for himself.

**Answer:        Denied.**

43.    In 2007, while inspecting a JARDIS warehouse in Bensenville, AL discovered iron castings that were exact duplicates of the part represented in 8273 D but which had the "Myco" designation on them. There and then, he realized that, upon information and belief, DEFENDANTS stole 8273 D, copied it, and were creating product from it exclusively for their own interests and profit. In no other way could 8273 D have been manufactured.

**Answer:        Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph. The facts which AL is alleged to have discovered are denied.**

44.    QUINN, ANDERSON and MYCO are doing exactly what they did at JARDIS for MYCO, and, have purloined 8273 D to manufacture their own part rather than compensate JARDIS for the purchase of their proprietary parts or for the copying of JARDIS' registered drawing, 8273 D.

**Answer:        Denied.**

45.    QUINN, individually and as agent, employee or apparent agent of GSS, has unlawfully obtained intellectual property and trade secrets to manufacture and sell parts on his own behalf, rather than to compensate JARDIS. Among those items he has unlawfully obtained and copied without permission is 8273 D.

**Answer:        Denied.**

46.    JARDIS did not learn of the misappropriation of its intellectual property and trade secrets by QUINN and GSS 2 until October 2007.

**Answer:    Defendant denies any misappropriation has occurred and denies that it first learned of any alleged misappropriation in 2007. As to what Plaintiff learned, and as to the remaining allegations of this paragraph, Defendant lacks knowledge or information sufficient to form a belief about the truth thereof.**

47.    Demand was made to ANDERSON and to MYCO to cease and desist the production and sale of these items and to return all improperly and unlawfully obtained intellectual property and trade secrets to JARDIS, but to date, neither ANDERSON nor MYCO have complied with or responded to this demand.

**Answer:    Defendant admits that Plaintiff sent a cease and desist letter, further averring that such letter was sent in November 2003. Defendant denies the remainder of the allegations in this paragraph.**

<u>COUNT I – VIOLATION OF THE UNITED STATES COPYRIGHT ACT OF 1976 – ANDERSON, QUINN, GSS 2 AND MYCO GRAFIX</u>

48.    JARDIS restates, realleges and incorporates Paragraphs 1-47 as and for Paragraph 48 of this Count I as though fully set forth herein.

**Answer:    Defendant re-asserts answers to paragraphs 1 through 47.**

49.    Upon information and belief, MYCO, ANDERSON and QUINN took 8273 D and recopied it as their own (the "INFRINGING DRAWING") such that they could make the 8273 D from it.

**Answer:    Denied.**

50.    Neither MYCO, ANDERSON, QUINN nor GSS 2 have been granted a license for nor did they obtain the right to use 8273 D. Nonetheless, they copied 8273 D and took it for themselves. Thereafter, they used their copy of 8273 D to manufacture and forge the part set forth in 8273 D and once they did so, put a MYCO designation/label on that part. The

DEFENDANTS thereafter began selling that part as if it were their own and as if it were made from their own drawing or design.

**Answer:**    **Denied.**

51.    Upon information and belief, Defendants MYCO, ANDERSON, QUINN and GSS 2 knowingly published and knowingly used the INFRINGING DRAWING when they placed it in the stream of commerce and began using it to manufacture proprietary JARDIS parts.

**Answer:**    **Denied.**

52.    The INFRINGING DRAWING is exactly similar and is likely just a direct copy of 8273 D and was used to manufacture MYCO'S version of 8273 D, which is unique and was formerly that which solely belonged to JARDIS.

**Answer:**    **Denied.**

53.    Without the consent of JARDIS and in complete disregard of JARDIS' copyright, DEFENDANTS have infringed and are infringing JARDIS copyright in 8273 D through their theft of it, recasting it as their own, copying of it and their manufacture of a specific JARDIS component part from it to undercut all of JARDIS' clients with the very property of JARDIS that they took, and using the very knowledge JARDIS gave them.

**Answer:**    **Denied.**

54.    The activities of ANDERSON, QUINN, MYCO and GSS 2 as well as their agents, as set forth above, constitute acts of copyright infringement without the consent and authority of JARDIS.

**Answer:**    **Denied.**

55.    DEFENDANTS are now in direct competition with JARDIS with respect to the creation of auxiliary printing press parts and services that are sold to clients of JARDIS.

**Answer:       Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

56.     DEFENDANTS do not refer to JARDIS as the copyright holder of the INFRINGING DRAWING or of any infringing work.

**Answer:       Defendant admits he does not refer to Jardis. Defendant denies remainder of the allegations in this paragraph.**

57.     The unauthorized and infringing use by the DEFENDANTS of 8273 D will, unless enjoined, cause irreparable harm, damage and injury to the PLAINTIFF.

**Answer:       Denied.**

58.     The infringement of JARDIS' copyright in 8273 D is presumed to cause irreparable harm, damage and injury to the PLAINTIFF unless all such wrongful and illegal acts of the DEFENDANTS are immediately enjoined.

**Answer:       Denied.**

59.     DEFENDANTS, by their unauthorized appropriation and use of the PLAINTIFF'S original drawing, have engaged and are engaging in acts of unfair competition, unjust enrichment, and wrongful deception of the purchasing public and unlawful trading on PLAINTIFF'S good will and the public acceptance of the PLAINTIFF'S original drawings, plans and works.

**Answer:       Denied.**

60.     As a direct and proximate result of the DEFENDANTS' infringing activity, JARDIS has sustained actual damages as defined in the United States Copyright Act of 1976 of the loss of income and profits from the copying and sale of the 8273 D plan and parts created therefrom.

**Answer:       Denied.**

61.     As a direct and proximate result of either or all of the DEFENDANTS' infringing activity, the DEFENDANTS obtained profits and continue to obtain profits from the wrongful infringement and use of 8273 D.

**Answer:        Denied.**

62.     As a direct and proximate result of the DEFENDANTS' infringing activity JARDIS will continue to sustain monetary damages and losses.

**Answer:        Denied.**

63.     As a direct and proximate result of the DEFENDANTS' infringing activities, each DEFENDANT wrongfully retained profits from the sale of the INFRINGING DRAWING and infringing work to a third party, in violation of the United States Copyright Act of 1976.

**Answer:        Denied.**

WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE ILLINOIS TRADE SECRETS ACT – QUINN AND GRAPHIC SYSTEM SUPPLY

[This count not directed at Defendant Anderson.]

## COUNT III BREACH OF FIDUCIARY DUTY – QUINN AND GRAPHIC SYSTEM SUPPLY

[This count not directed at Defendant Anderson.]

## COUNT IV – VIOLATION OF DECEPTIVE TRADE PRACTICES ACT – QUINN AND GRAPHIC SYSTEM SUPPLY

[This count not directed at Defendant Anderson.]

## COUNT V – INJUNCTIVE RELIEF – QUINN AND GRAPHIC SYSTEM SUPPLY

[This count not directed to Defendant Anderson.]

14

<u>COUNT VI – MISAPPROPRIATION OF TRADE SECRETS –
ANDERSON AND MYCO GRAFIX</u>

110.    JARDIS restates, realleges and incorporates by reference the allegations made in

Paragraphs 1-47 as and for Paragraph 110 of this Count VI as though set forth fully herein.

**Answer:    Defendant reasserts answers to paragraphs 1 through 47.**

111.    On or around June 2002, JARDIS verbally offered and ANDERSON and MYCO

verbally accepted an arrangement whereby ANDERSON and MYCO were allowed to purchase

equipment and component parts from JARDIS for resale to the customers of ANDERSON and

MYCO in Central and South America.

**Answer:    Defendant admits an offer was made, and denies the remainder of the
allegations in this paragraph.**

112.    The parties therefore formed a contract and performed under this agreed upon

arrangement from on or about that time to and including 2007.

**Answer:    Denied.**

113.    Unbeknownst to JARDIS, throughout this time, ANDERSON and MYCO had

been purloining JARDIS' trade secrets, which included but were in no way limited to JARDIS'

parts, designs, proprietary information, processes and pricing information as well as its vendor

and client lists.

**Answer:    Denied.**

114.    As a result of ANDERSON'S and MYCO'S slow bleeding raid of JARDIS, each

took a substantial portion of JARDIS' business from it for themselves.

**Answer:    Denied.**

115.    JARDIS discovered this raid in 2007, upon inspection of one of its own

warehouses.

**Answer:    Denied.**

116.    Upon information and belief, ANDERSON and MYCO, have misappropriated JARDIS' trade secrets and have begun duplicating JARDIS' products and component parts to its customers to the detriment and exclusion of JARDIS and have passed off these duplicated products and component parts as their own.

**Answer:        Denied.**

117.    JARDIS is, and continues to be, irreparably harmed by ANDERSON'S and MYCO'S misappropriation of its trade secrets and has no adequate remedy at law for ANDERSON'S and MICA'S continuing misappropriation of its trade secrets.

**Answer:        Denied.**

118.    By reason of the facts alleged, JARDIS is reasonably likely to succeed on the merits of its claim because JARDIS has raised a fair question of fact that ANDERSON and MYCO have misappropriated and violated JARDIS' trade secrets, and have interfered with JARDIS' solicitation of their current and prospective clients.

**Answer:        Denied.**

119.    Good cause exists for the issuance of a preliminary and permanent injunction without bond.

**Answer:        Denied.**

120.    Accordingly, a bond should not be required in conjunction with the entry of injunctive relief in this cause.

**Answer:        Denied.**

121.    ANDERSON' S and MYCO' S conduct was willful and malicious, as a result, punitive damages, attorneys' costs and fees should be imposed upon them pursuant to 765 ILCS 1065/5.

**Answer:        Denied.**

**WHEREFORE, Defendant denies the Plaintiff is entitled to any relief whatsoever.**

COUNT VII – BREACH OF CONTRACT – ANDERSON AND MYCO GRAFIX

122.     JARDIS restates, realleges and incorporates by reference the allegations made in Paragraphs 1-47 as and for Paragraph 122 of this Count VII as though set forth fully herein.

**Answer:        Defendant reasserts answers to paragraphs 1 through 47.**

123.     On or around June 2002, JARDIS verbally offered and ANDERSON and. MYCO verbally accepted an arrangement whereby ANDERSON and MYCO were allowed to purchase equipment and component parts from JARDIS for resale to the customers of ANDERSON and MYCO.

**Answer: Defendant admits and offer was made, and denies the remainder of the allegations in this paragraph.**

124.     Accordingly, the three parties formed a contract under which they performed without incident and to their mutual benefit from 2002 to 2007.

**Answer:        Denied.**

125.     In breach of this verbal agreement, ANDERSON and MYCO have misappropriated JARDIS' trade secrets and have begun duplicating JARDIS' products and component parts to its customers to the detriment and exclusion of JARDIS and have passed of these duplicated products and component parts as their own.

**Answer:        Denied.**

126.     As a direct and proximate result of this breach, JARDIS has suffered injury in the lost profits from the sales made from the duplicated products and component parts. JARDIS has also suffered injury to the extent that these duplicated products and component parts are made through infringement upon JARDIS' trade secrets.

**Answer: Denied.**

**WHEREFORE, Defendant denies Plaintiff is entitled to any relief whatsoever.**

## COUNT VIII – VIOLATION OF DECEPTIVE TRADE PRACTICES ACT – ANDERSON AND MYCO GRAFIX

127.    JARDIS restates, realleges and incorporates by reference the allegations made in Paragraphs 1-47 as and for Paragraph 127 of this Count VIII as though set forth fully herein.

**Answer:        Defendant reasserts answers to paragraphs 1 through 47.**

128.    At all relevant times, there was in force and effect the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 et seq., which provides:

"(a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:

(1)      passes off goods or services as those of another;

(2)      causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3)      Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;

(5)      represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;

(12)     engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILLS 510/2.

**Answer:        The included language is not an allegation subject to answer under Fed. R. Civ. P. 8(b).**

129.    Upon information and belief, ANDERSON and MYCO have misappropriated JARDIS' trade secrets and have used and continues to use JARDIS' proprietary manufacturing processes, drawings, parts lists, equipment manuals, customer and vendor lists to duplicate,

manufacture and sell JARDIS' products and component parts to the detriment and exclusion of JARDIS and to pass off those duplicated products and component parts of their own design and manufacture.

**Answer:       Denied.**

130.    At all relevant times, ANDERSON was acting as the employee, agent or apparent agent of MYCO.

**Answer:       Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

133.    ANDERSON'S and MYCO'S misappropriation, misuse and infringement upon JARDIS' trade secrets is in violation of the Illinois Deceptive Trade Practices Act.

**Answer:       Denied.**

132.    ANDERSON'S and MYCO'S conduct was willful and malicious, as a result, punitive damages, attorneys' costs and fees should be imposed upon them for their violations of the Illinois Deceptive Trade Practices Act, such that PLAINTIFF is entitled to recovery of attorneys' fees. 810 ILLS 510/3.

**Answer:       Denied.**

**WHEREFORE, Defendant denies Plaintiff is entitled to any relief whatsoever.**


COUNT IX – INJUNCTIVE RELIEF – ANDERSON AND MYCO GRAFIX

133.    JARDIS restates, realleges and incorporates by reference the allegations made in Paragraphs 1-47 as and for Paragraph 133 of this Count IX as though set forth fully herein.

**Answer:       Defendant reasserts answers to paragraphs 1 through 47.**

134.    As stated more fully above, JARDIS has a clearly ascertainable right and protectable [sic.] interest in its confidential and proprietary manufacturing processes, drawings,

parts lists, equipment manuals, customer and vendor lists and other confidential trade secrets and proprietary information.

**Answer:    Denied.**

135.    JARDIS' clearly ascertainable right, as based on the facts alleged in this COMPLAINT, needs protection from ANDERSON'S and MYCO'S willful, wanton and malicious conduct.

**Answer:    Denied.**

136.    JARDIS has suffered injury as a result of the infringement upon its trade secrets, loss of its confidential and proprietary business information, as well as its expectancy in its current and future business relationships with existing and future clients.

**Answer:    Denied.**

137.    If ANDERSON and MYCO are not enjoined from infringing upon JARDIS' trade secrets and using that improperly obtained information to solicit JARDIS' current and prospective clients and from passing of duplicates of JARDIS' products and component parts as their own design and manufacture, JARDIS will continue to suffer injury.

Answer:    **Denied.**

138.    As a result, JARDIS will suffer far greater harm without injunctive relief than will ANDERSON and MYCO with the grant of an injunction, as an injunction will only require them to refrain from using the trade secrets and other confidential and proprietary materials that were improperly and unlawfully obtained from JARDIS.

**Answer:    Denied.**

139.    The injury to JARDIS is ongoing in nature, and will result in irreparable harm for which there is no adequate remedy at law because the loss of current and prospective clients, the

continuing infringement upon its trade secrets, and damage to its reputation is impossible to ascertain.

**Answer:**     **Denied.**

140.    The activities now being undertaken by ANDERSON and MYCO are not only fundamentally unfair, they have directly injured JARDIS and are the fruits of ANDERSON'S and TYCO'S misappropriation of JARDIS' trade secrets and other confidential and proprietary business information, and therefore, their conduct should be immediately enjoined.

**Answer:**     **Denied.**

141.    By reason of the facts alleged, JARDIS is reasonably likely to succeed on the merits of its claim because ANDERSON and MYCO have breached their agreements with JARDIS, have interfered with JARDIS' reasonably anticipated business relationships with its current and prospective clients, and have stolen JARDIS' trade secrets and have breached their fiduciary duties owed to JARDIS.

**Answer:**     **Denied.**

142.    Good cause exists for the issuance of a preliminary and permanent injunction without bond.

**Answer:**     **Denied.**

143.    Accordingly, a bond should not be required in conjunction with the entry of injunctive relief in this cause.

**Answer: Denied.**

**WHEREFORE, Defendant denies that Plaintiff is entitled to any relief whatsoever.**

## <u>AFFIRMATIVE DEFENSES</u>

1.  All claims for injunctive and other equitable relief are barred by *laches* and unclean hands due to plaintiff's conversion and theft of intellectual property and other

inequitable conduct or conduct in derogation of common and/or statutory law.

2.  All claims for damages and other relief at law under the various counts asserted are completely or partially barred by respective statutory statutes of limitations.

3.  No trade secrets misappropriation or deceptive practices or copyright infringements, as alleged by plaintiff, existed because:

    a.   its alleged customer and vendor lists do not statutorily constitute trade secrets; and/or

    b.  Plaintiff granted an implied license to defendants; and/or

    c.   one or more defendants' reverse engineering do not constitute any violation of others' trade secrets or any other violation of common law or statutory law; and/or

    d.  such alleged trade secrets are in fact known and readily available to other persons and within the public domain; and/or

    e.  one or more defendants were never requested by plaintiff to undertake any confidentiality agreements whatsoever to more specifically address or supplement their common law duties as employees; and/or

    f.   plaintiff failed to perfect any intellectual property rights to now allege the existence of trade secrets and/or plaintiff appropriated, that is, committed conversion and theft of certain intellectual property; and/or

    g.  No confusion arose in the marketplace because of one or more defendants' actions or inactions; and/or

    h.  The alleged oral-verbal agreement is unenforceable under the Florida and Illinois statutes of frauds because it was never reduced to writing; and/or

      i.  Plaintiff's allegations are factually specious, pled in bad faith, and

consequently are sanctionable.

Respectfully submitted,

MICHAEL ANDERSON


By: s/Evan D. Brown                  
      One of his attorneys


Evan D. Brown
IL No. 6277187
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
ebrown@hinshawlaw.com

Steven H. Jesser, Attorney at Law, P.C.
IL No. 1337289
790 Frontage Road, Suite 110
Northfield, IL 60093
(847) 424-0200
shj@sjesser.com

<u>CERTIFICATE OF SERVICE</u>

I certify that pursuant to Local Rule 5.5, service of the foregoing DEFENDANT'S ANSWER was accomplished upon all Filing Users pursuant to the Court's Electronic Case Filing system on **March 23, 2009**.


/s/ Evan D. Brown